**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CREATIVE TRADE GROUP, INC,<br>a Connecticut Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 2561 |
| | ) | |
| INTERNATIONAL TRADE ALLIANCE, INC.,<br>a Florida Corporation, and<br>McGRATH-COLOSIMO, LTD d/b/a<br>McGRATH LEXUS OF CHICAGO,<br>an Illinois Corporation, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Creative Trade Group, Inc. ("Creative") is an automobile broker and seller who claims that Defendant McGrath Lexus ("McGrath"), a Chicago-area car dealership, fraudulently obtained and converted over $171,000 of Creative's funds in connection with the aborted sale of two luxury automobiles. In its decision denying Creative's motion for summary judgment, the court recounted the parties' divergent factual accounts and commented on the possibility that Valeriy Pychnenko, who arranged the transaction that gave rise to this lawsuit, might be a necessary party under FED.R.CIV.P. 19. McGrath has taken the hint and has moved to compel Plaintiff to join Pychnenko as a necessary party. For the reasons explained here, the court finds that Pychnenko is indeed a necessary party to this action and orders his joinder. The court directs McGrath to serve Pychnenko with process.

## BACKGROUND

The facts, as more fully described in the earlier opinion, are as follows: Gregory Katz, Creative's owner and sole director, claims he contacted Pychnenko in December 2007 in an effort to locate and purchase luxury automobiles. *See Creative Trade Group, Inc. v. International Trade Alliance*, No. 08 C 2561, 2009 WL 3713345, *1-6 (N.D.Ill. Nov. 4, 2009). Katz had done business with Pychnenko in the past and was aware that Pychnenko had relationships with car dealerships

and auto brokers that might be of assistance. In response to Katz's request, Pychnenko forwarded a promotional e-mail that Pychnenko had received from Yaroslav Farber, president of International Trade Alliance ("ITA"), an automobile broker. (ITA was originally named as a Defendant in this case but has filed for bankruptcy protection.)

The e-mail, which the parties agree was never intended for Katz or Creative, advertised the availability of two vehicles that fit Katz's request. Pychnenko assured Katz that Creative could rely on Pychnenko's contacts with ITA to obtain the vehicles. Based on these assurances, Creative alleges, Katz and Pychnenko entered into an oral contract, whereby Creative agreed to pay the sales price for the vehicles directly to the titleholder and a finder's fee to Pychnenko upon delivery. ITA's and McGrath's principals deny any knowledge of such an agreement and, in fact, maintain that they knew nothing about Katz or Creative until well after the transaction in question had occurred. The parties agree that Pychnenko was not an agent of either ITA or McGrath and that he had no authority to make representations or enter contracts on behalf of those entities.

Following his negotiation and agreement with Katz, Pychnenko contacted Farber at ITA and expressed an interest in purchasing a block of four automobiles, including the two vehicles that he had promised to obtain on behalf of Creative. According to Farber, Pychnenko never mentioned Katz or Creative and did not say that he was acting on behalf of any other purchaser. Farber replied to Pychnenko by e-mail, instructing Pychnenko to wire $342,726.00, the total price for the four vehicles that Pychnenko had requested, to Defendant McGrath's dealership account. McGrath and ITA enjoyed a long-standing business relationship and had established a process in which ITA or its customers would wire money directly into McGrath's account with the expectation that ITA would later identify cars it desired to purchase from McGrath. The apparent implication of the e-mail exchange between Farber and Pychnenko was that ITA would instruct McGrath to apply Pychnenko's money toward the purchase of the four vehicles he had requested. That is not, however, the instruction that ITA ultimately gave McGrath.

Unbeknownst to Farber, Pychnenko forwarded Farber's e-mail containing the wire transfer

instructions to Katz and directed Katz to transfer $171,388 to McGrath's account. Katz did so, allegedly with the expectation that McGrath would accept the funds as payment for the two vehicles that Creative desired. Bank records show that, on January 18, 2008, Katz transferred $171,388 from Creative's bank account to the McGrath account, exactly as Pychnenko had instructed. Katz admits that he never contacted McGrath or ITA before initiating this wire transfer.

The parties dispute the true origin of the funds that Katz transferred. Records of Creative's bank account show that, moments before Creative wired the funds to McGrath, Creative's account received an incoming wire transfer in the amount of $182,290. That transfer originated in an account in the name of "Hazel U.K. Limited Companies House" ("Hazel U.K.") at a branch bank located on the island of Cyprus. Katz testified that Hazel U.K. is Creative's long-standing customer and that Hazel U.K. had agreed, under a separate contractual arrangement, to finance Creative's deal with Pychnenko and later to convey the two luxury automobiles to an end-purchaser in Ukraine. Creative asserts that either Hazel U.K. or its unidentified customer prepaid the entire sale. In response to a challenge to its standing to proceed in this lawsuit, Creative produced an assignment from Hazel U.K., but Creative's agents have steadfastly refused to reveal Hazel U.K.'s end purchaser or the nature of Creative's relationships with that entity. (Katz Dep. at 56, 83, 92.)

McGrath contests the existence of Hazel U.K. as anything more than a legal form, and has presented evidence showing the following: that Hazel U.K. is registered as a corporation in the United Kingdom, but that the corporation's registered address is in fact the address of an entirely different and unrelated company; that Hazel U.K. maintains no publicly-available telephone or fax numbers; and that Hazel U.K.'s lone registered corporate director has recorded approximately 68 other company appointments in the United Kingdom, one listing his occupation as "caterer," and lists as his mailing address a location in the Republic of Seychelles, an archipelago nation of 115 islands in the Indian Ocean. In its earlier opinion, this court noted the possibility that "Hazel U.K. may be nothing more than a shell company, either of Pychnenko or some other entity." *Creative Trade Group, Inc.,* 2009 WL 3713345 at *10.

Both Yaroslav Farber and Leszek Przybylski, co-owners of ITA, testified that they believed the January 18 wire transfer originated solely with Pychnenko. In his prior dealings with ITA, Pychnenko's common practice had been to funnel payments from offshore bank accounts through various third-party companies as intermediaries. (Farber Dep. at 61; Przybylski Dep. at 41.) Farber and Przybylski also claim that Pychnenko had represented to them that he was responsible for the transfer. (Przybylski Dep. at 33; Farber Aff. at ¶ 12.) According to Farber, Pychnenko owed ITA more than $700,000 from previous purchases and was in ongoing negotiations with the company to retire his substantial debt. Farber stated that ITA decided to claim the $171,388 as partial satisfaction of Pychnenko's outstanding debt based on the assumption that Pychnenko was the true originator of the wired funds. Thus, Przybylski contacted McGrath's sales manager, Michael Simon, purportedly by fax, and instructed Simon to apply the proceeds of the wire transfer toward ITA's general account with the McGrath dealership. (A copy of this instruction is in the record, but it bears no date or other markings reflecting facsimile transmission.) Presumably in late January, Simon did as Przybylski instructed. McGrath never sent the vehicles or returned any money to Creative or Pychnenko.

Simon testified that he was not aware of any dispute over the transferred funds until February 13, 2008, when he received a letter and telephone call from Plaintiff's attorney, Glenn Seiden. According to Simon, Seiden initially represented himself as the attorney for Valeriy Pychnenko and demanded either delivery of the vehicles or the return of the transferred funds. McGrath has produced copies of demand letters sent by Seiden on Pychnenko's behalf as late at March 2008, two months before Seiden filed this suit on behalf of Creative. Simon ultimately refused Seiden's requests, ostensibly because McGrath was unable to determine whether the transferred funds had originated with Creative or Pychnenko. (Simon Aff. at ¶ 9.)

Creative filed suit against McGrath and ITA in May 2008. ITA filed a third-party complaint against Pychnenko two months later, but could not locate Pychnenko to effectuate service of process. Pychnenko resurfaced in July 2009, when he was arrested by DEA agents in connection

with a narcotics sting operation in Camden, New Jersey. Indicted on federal charges in New Jersey, Pychnenko is currently in federal custody awaiting trial on a charge of conspiracy to possess and distribute cocaine. (*See* Criminal Complaint, Ex. F to Def. Mot.)

Prompted by the court's concerns, Defendant McGrath argues that Pychnenko is a necessary party and seeks an order compelling Creative to name him.

## DISCUSSION

### I.    Compulsory Joinder of Necessary Parties

Rule 19(a)(2) states that the court "must order" that a person be made a party if that person is necessary and has not been joined as required. *See Askew v. Sherif of Cook County, Ill.*, 568 F.3d 632, 634 (7th Cir. 2009). "A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff." FED.R.CIV.P. 19(a)(2). A defendant making a Rule 19 motion typically seeks one of two things: to join a necessary party by court order under Rule 19(a), or to have a case dismissed because a necessary party cannot be feasibly joined under Rule 19(b). Here, McGrath appears to seek the former. Oddly, however, while McGrath argues that Pychnenko is a necessary party who can and should be feasibly joined under Rule 19(a), McGrath has not sought to join Pychnenko itself. Rather, McGrath requests that the court compel Plaintiff to amend its complaint to add Pychnenko as a co-defendant in this action. As explained below, the court concludes that Pychnenko is a necessary party to this action, and there is no evidence that he cannot be feasibly joined. The court declines, however, to compel Plaintiff to amend its complaint at this stage; instead, the court construes McGrath's motion as a standard Rule 19(a) motion to join Pychnenko as a necessary party, grants that motion, and directs McGrath to serve Pychnenko with process and with notice of the claims against him.[1]

---

[1]    The court set the date for a final pretrial conference in this case for April 23, 2010, and indicated that it would resolve this motion prior to that date. "District courts may consider joinder under Rule 19 at any time and, in fact, have an affirmative obligation to do so." *Mombourquette v. Amundson*, No. 05 C 748, 2006 WL 3761341, *4 (W.D. Wis., Dec. 20, 2006)(citing *Provident Tradesmens Bank & Trust Co. v Patterson*, 390 U.S. 102, 111 (1968)).

(continued...)

Application of Rule 19 depends, of course, on the unique facts of each case, *LeBeau v. Libby-Owens-Ford Co.*, 484 F.2d 798, 800 (7th Cir. 1973), but the rule is governed by a consistent underlying policy. It represents an impulse toward entertaining the broadest possible scope of action that is consistent with fairness to the parties; in other words, the rule "strongly encourages" joinder. *Mayer Paving and Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763, 771 (7th Cir. 1973) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966)). The rule reflects a societal interest in achieving comprehensive and efficient resolution of disputes by avoiding multiple, piecemeal lawsuits. *See Martin Implement Sales, Inc., v. Ford New Holland, Inc.*, No. 87 C 8883, 1989 WL 31031, *2 (N.D.Ill. March 29, 1989). It also seeks to protect the rights of the absentee party and the existing parties to the case from inconsistent obligations. Fed.R.Civ.P.19(a)(1)(B).

The first step in any Rule 19 analysis is to determine whether a prospective party falls within the scope of Rule 19(a)(1). *Askew*, 568 F.3d at 634. Under the rule, a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction *must* be joined as a party to the litigation if: (1) the court cannot accord complete relief among the existing parties in that person's absence; or (2) the person claims an interest relating to the subject of the action and is situated such that a disposition in the person's absence would, as a practical matter, impede her ability to protect the interest or leave an existing party at risk of incurring inconsistent obligations. Fed.R.Civ.P.19(a)(1). This court has already noted its concern that Pychnenko belongs in this litigation. In the closing paragraphs of its November 2009 order, the court noted the possibility that it could be "unable to accord complete relief among the existing parties in Pychnenko's absence." *Creative Trade Group, Inc.*, 2009 WL 3713345, at *12-13. The court explained:

---

[1](...continued)
While the federal rules compel Pychnenko's joinder, they do not require that Creative amend its pleadings on the eve of trial in order to effectuate that joinder.

> The interactions between Plaintiff and Defendant that give rise to this dispute occurred solely through Pychnenko . . . as intermediary.  To the extent Plaintiff has any potential contractual or quasi-contractual claims, they would appear to apply with greatest force against . . . Pychnenko, the only participant in the exchange with which Creative actually contracted.  Pychnenko, and no one else, directed Plaintiff to wire its money to McGrath's account.  Notably, Defendant's arguments against summary judgment rest on a theory that Pychnenko used Creative to funnel money to ITA.

*Id.*  The parties have not challenged this conclusion, and McGrath has accepted the court's invitation to move for joinder of Pychnenko.

## II.    Complete Relief Requires Pychnenko's Presence

Creative has charged McGrath with the torts of conversion, consumer fraud, and unjust enrichment.  While Rule 19 typically does not require joint tortfeasors to be joined as necessary parties, a joint tortfeasor is considered a necessary party when the absent party "'emerges as an active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation.'"  *See Laker Airways, Inc. v. British Airways*, *PLC*, 182 F.3d 843, 848 (11th Cir. 1999)(quoting *Haas v. Jefferson Nat'l Bank*, 442 F.2d 394, 398 (5th Cir. 1971)).  In this case, the record demonstrates that Pychnenko is "more than a key witness" to the events that give rise to these claims; rather, he was an active participant whose "presence is crucial to determining the important issue of liability*." See Bailey ex rel. Bailey v. Toyota Motor Corp.*, No. 01 C 1456, 2003 WL 23142185, *8 (S.D. Ind., Oct. 31, 2003) (quoting *Whyham v. Piper Aircraft Corp.*, 96 F.R.D. 557, 561 (M.D.Pa. 1982)).

Creative has presented evidence that Pychnenko was the sole conduit between Creative and Defendants prior to the wire transfer.  Pychnenko was responsible for all pertinent communications and representations to Creative.  Pychnenko promised Katz that he would obtain the desired vehicles, and Pychnenko ultimately directed Katz to send the wire transfer to McGrath.  Creative admits that its only contacts with ITA or McGrath prior to the transfer were mediated entirely through Pychnenko.  Whatever inducements or representations may have caused Katz to transfer the funds, therefore, came directly from Pychnenko.

Pychnenko was also primarily responsible for all communications to ITA regarding the state of the transaction and the purpose and origin of the disputed funds. There is no evidence that Pychnenko ever informed ITA of Creative's involvement in the transaction. Instead, according to ITA's principals, Pychnenko made statements asserting an exclusive interest in the wired funds. Whether Pychnenko misled Creative, ITA, or both, he emerges as a major player (and perhaps the motivating catalyst) in the relevant events. His presence will likely be crucial to determining the issue of liability on Creative's claims.

### III. Pychnenko Has an Interest in this Litigation

Compulsory joinder is further justified because Pychnenko has an interest in this case that could be jeopardized by his absence or could result in inconsistent obligations to the parties. At its core, this case is about who is rightfully entitled to the proceeds of the disputed wire transfer. When the disposition of property is implicated, as it is in this case, any party claiming a protected interest in that property is potentially a necessary party under Rule 19(a). *See Burger King Corp. v. American Nat'l Bank & Trust Co.*, 119 F.R.D. 672, 676 (N.D.Ill. 1998). Likewise, "protection of the contract interests of third parties has frequently been recognized as a determinative factor in the Rule 19(a) inquiry. . . ." *Martin Implement Sales, Inc.*, 1989 WL 31031 at *3. In this case, Pychnenko could assert both that he has an interest in the disputed funds and that he is a party to a contract at issue.

Farber and Przybylski testified that Pychnenko made statements asserting his ownership of the disputed funds. They also testified that it was Pychnenko's regular practice to funnel his payments to ITA through third-party companies. This testimony, viewed in concert with the evidence demonstrating the shadowy nature of Hazel U.K., permits the inference that Pychnenko may indeed have been the source of the funds at issue. Whether or not he is the true originator of the funds, Pychnenko unquestionably asserted a right to the proceeds through an attorney, Glenn Seiden, who made calls and sent demand letters to McGrath on his behalf. Seiden now, curiously, represents Creative–another suggestion that there is a relationship between Pychnenko

and Creative that has not been fully explained.

The claimed existence of a contractual agreement between Pychnenko and Creative also weighs in favor of Pychnenko's joinder. Katz asserts that he had an oral contract with Pychnenko. Pychnenko also arguably had some kind of implicit understanding with ITA about the purpose of the transferred funds, which were ultimately credited to Pychnenko as satisfaction of an outstanding debt he owed to ITA. The court's disposition in this case may well have an impact on Pychnenko's contractual rights, as a finding in favor of Creative could amount to a finding that Pychnenko breached his obligations to Creative or ITA. Accordingly, Pychnenko is a party whose joinder is required by Rule 19.

## IV.    Pychnenko's Joinder is Feasible

Although McGrath itself appears to have made no effort to join Pychnenko, McGrath asserts that joinder is feasible. As noted, Pychnenko is reportedly in federal custody on drug charges in New Jersey. The court presumes he is subject to service of process under FED.R.CIV.P. 4(e). McGrath has produced court filings in Pychnenko's criminal case, which identify Pychnenko as a citizen of Canada, indicating that his presence would not defeat subject matter jurisdiction in this action in diversity. Thus, under the requirements of Rule 19(a), it appears that Pychnenko may be feasibly joined. It may be argued that Pychnenko would, as a practical matter, be unable to participate in this case, but neither party has made such an argument and the court declines to entertain it *sua sponte*. Nor does the court consider whether Pychnenko might raise an objection to venue that might warrant dismissal pursuant to Rule 19(a)(3).

## CONCLUSION

Defendant's motion [112] is construed as a motion to join Valeriy Pychnenko in this action pursuant to FED.R.CIV.P. 19(a) and is granted. The court orders that Pychnenko be joined, and directs McGrath to give Pychnenko notice of the claims against him and serve him with process.

ENTER:

Dated: April 16, 2010

_____
REBECCA R. PALLMEYER
United States District Judge